TIMOTHY K. ADAMS
H. JEROME STRICKLAND
W. WARREN PLOWDEN, JR.
RUFUS D. SAMS III
STEVE L. WILSON
THOMAS C. ALEXANDER
ROBERT C. NORMAN, JR.
H. J. STRICKLAND, JR.
CATER C. THOMPSON
THOMAS W. JOYCE
BRANDON A. OREN
SHARON HURT REEVES
JEFFERY O. MONROE
CALLIE DICKSON BRYAN
EUGENE S. HATCHER, JR.
J. PATRICK GOFF
CANON B. HILL
CHRISTOPHER J. ARNOLD

# JONES CORK & MILLER LLP
ATTORNEYS AT LAW

Established 1872

Fifth Floor SunTrust Bank Building
435 Second Street
Post Office Box 6437
Macon, Georgia 31208-6437
Telephone (478) 745-2821
Facsimile (478) 743-9609
www.jonescork.com

HAYS B. MCQUEEN
RENEE' S. RAINEY
COLLIER W. MCKENZIE

OF COUNSEL
CARR G DODSON

EMERITUS COUNSEL
CHARLES M. CORK, JR.
HUBERT C. LOVEIN, JR.

C. BAXTER JONES
1895-1968
CHARLES M. CORK
1908-1982
WALLACE MILLER, JR.
1915-2000
FRANK C. JONES
1925-2012

October 9, 2014

**Via E-mail athompson@sgrlaw.com**
**and Certified Mail**
**Return Receipt Requested**
**7012 1010 0003 6952 9882**

Chattahoochee Riverkeeper, Inc.
Attn: Andrew M. Thompson
Smith, Gambrell & Russell, LLP
Promenade, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, GA 30309-3592

      Re:    CRK August 11, 2014 Clean Water Act Notice Letter – Response of M & K
              Warehouses, LLC

Dear Mr. Thompson:

      This firm, along with Pat O'Brien of the Thompson, O'Brien, Kemp & Nasuti law firm with whom you previously have had communications, represents M & K Warehouses, LLC ("M&K") in regard to the above-referenced matter. This is the response by M&K to the August 11, 2014 letter from you on behalf of Chattahoochee Riverkeeper, Inc. ("CRK") styled "Notice of Intent to Sue Under Section 505 of the Clean Water Act, 33 U.S.C. § 1365" (the "CRK Notice").

      The CRK Notice contains allegations that American Sealcoat Manufacturing, LLC ("American Sealcoat") is operating an industrial facility on the real property located at 525 Frederick Court in Atlanta (per your letter, the "Frederick Court Site") without discharge permits required by the Clean Water Act ("CWA") and the Georgia Water Quality Control Act ("GWQCA"). The CRK Notice alleges that M&K, as the property owner and lessor of the Frederick Court Site to American Sealcoat, also has legal responsibility with respect to alleged discharges from the American Sealcoat facility and the alleged absence of the appropriate NPDES "point source" and storm water discharge permits for the American Sealcoat industrial

**Exhibit "A" to Answer and Defenses**

1

facility. Respectfully, M&K denies that it has legal responsibility or any liability under relevant provisions of the Clean Water Act or General Storm Water Permit GAR050000 for discharges of storm water or other discharges, if any, associated with industrial activities conducted by American Sealcoat at the Frederick Court Site[1]. On information and belief, M&K also denies the material factual allegations in the CRK Notice, with the possible exception of the previous absence of a Notice of Intent by American Sealcoat for coverage under the General Storm Water Permit, an omission which we understand has since been satisfied by American Sealcoat to obtain compliance with GAR050000.

This response to the CRK Notice is being provided within the 60-day response period provided in the "citizen suit" provisions of the Clean Water Act. With the exception of your verbal communications with Mr. O'Brien shortly after M&K's receipt of the CRK Notice in August, we have not sooner responded to the CRK Notice as we have been attempting to determine relevant facts, obtain information and documents from American Sealcoat and the Georgia Environmental Protection Division, and evaluate the factual allegations in the CRK Notice. Our investigation indicates that CRK delivered a citizen suit notice under the Clean Water Act to American Sealcoat on or about May 28, 2014. CRK proceeded to file a federal court legal action against American Sealcoat on July 30, 2014 pursuant to provisions of the Clean Water Act codified in 33 U.S.C. §§ 1251, 1311(a), 1342 and 1365. American Sealcoat filed an Answer to the CRK Complaint on September 11, 2014, in which American Sealcoat denies the material allegations of the CRK Complaint, denies that the American Sealcoat facility has any non-storm water "point source" discharges of pollutants, and denies that it is currently in violation of the Clean Water Act with respect to unpermitted discharges of storm water associated with the American Sealcoat industrial facility and related activities.

It is our understanding that American Sealcoat proceeded either before or shortly after receipt of the May 28, 2014 citizen suit notice from CRK to submit a Notice of Intent under GAR050000 and that it is complying with the requirements of that General Permit. American Sealcoat specifically denies any discharge of a "black oily liquid" from or as a result of American Sealcoat's industrial activities, and specifically denies in its Answer that any discharge of storm water at the American Sealcoat facility is exposed to any pollutants from American Sealcoat's industrial operations or activities on the Frederick Court Site. American Sealcoat's Answer to the CRK Complaint also denies that any discharge from the American Sealcoat facility impacts any Chattahoochee River tributary or any other waters of the United States, as necessary to jurisdiction of CRK's claims under the Clean Water Act. We also understand that American Sealcoat and its attorney and environmental consultant have identified a neighboring facility operated by a different company named Seal Master as a potential source of pollutants which CRK claims to have identified and alleges as a basis for its citizen complaint.

---

[1] The CRK Notice you issued to American Sealcoat on May 28, 2014 identified American Sealcoat as the exclusive actor in CRK's claims for violations of the Clean Water Act and responsible for all damages, penalties and subject to injunctive relief. You specifically did not allege that there were any additional responsible parties.

Based on the response of American Sealcoat to CRK's allegations, and based on our investigation and other information obtained by M&K, M&K denies the factual allegations in the CRK Notice asserting the existence of unpermitted discharges of pollutants from the American Sealcoat facility and activities at the Frederick Court Site that adversely impact a Chattahoochee River tributary or other jurisdictional water of the United States. Prior to the August 11, 2014 CRK Notice to M&K, American Sealcoat had obtained coverage under and was complying with GAR050000 for discharges of storm water from the American Sealcoat facility. M&K further denies the existence of any alleged ongoing violations of the Clean Water Act by or at the American Sealcoat facility as of the date of this response letter. We understand from communications with you and American Sealcoat that the Georgia Environmental Protection Division has taken appropriate enforcement action with respect to the American Sealcoat facility by issuing a proposed Consent Order to American Sealcoat. That enforcement action by the Georgia EPD represents diligent prosecution with respect to the violations alleged in the CRK citizen suit notice letters. We reasonably expect those matters will be resolved by means of the EPD enforcement activities and by voluntary actions of American Sealcoat.

M&K is not in violation of the Clean Water Act or GAR050000. Even if the allegations by CRK in its July 30, 2014 citizen suit notice to American Sealcoat and the Complaint in CRK's legal action against American Sealcoat were shown to have some factual and legal merit, CRK cannot state a legally valid claim against M&K under the applicable provisions of the Clean Water Act arising from those alleged facts. M&K is a real estate leasing business. M&K is only a passive, out-of-possession lessor of the Frederick Court property to American Sealcoat, pursuant to a Warehouse Lease dated April 24, 2012 (the "Lease"), which is the only contract between M&K and American Sealcoat, which Lease speaks for itself. Under the terms of the Lease, M&K relinquished all control of the premises to American Sealcoat for the term of the Lease and M&K retains no concurrent right to possession of the property. The Lease in all respects evidences a completely arms length relationship between M&K and American Sealcoat. M&K has no legal or financial interest in American Sealcoat or its operations on the leased property. It is not involved with and does not exercise any control over American Sealcoat's industrial operations or activities on the leased property.

The Lease is clear that it is American Sealcoat's sole responsibility as Tenant to obtain any governmental permits or approvals required for its use of the leased premises in accordance with applicable laws. The Lease expressly requires that American Sealcoat as Tenant is required to comply with all governmental laws, ordinances and regulations applicable to the use of the leased property and all governmental orders and directives for the correction, prevention and abatement of nuisances in, upon, or connected with the leased property. Pursuant to the express terms of the Lease, maintenance and repair of the common areas within the leased premises is the sole responsibility of American Sealcoat as Tenant. The Lease specifically states that no part of the premises may be used in any manner in violation of the laws, ordinances, regulations or orders of the United States or the State of Georgia or local ordinances.

Specific to the allegations in the CRK Notice, American Sealcoat as the Tenant undertakes and is expressly required by the Lease to maintain throughout the term of the Lease

full compliance with all federal and state environmental laws and regulations, specifically including the Clean Water Act and its regulations. Those terms specifically prohibit American Sealcoat from causing or permitting any condition on the leased premises which is or may be in violation of any environmental law including the Clean Water Act or regulations. The Warehouse Lease requires that American Sealcoat notify M&K of the occurrence of any condition or activity on the property that violates applicable provisions of environmental laws or regulations (again specifically including the Clean Water Act) and of the receipt by American Sealcoat of any communication from any government authority or other person alleging any prohibited activity or condition on the leased premises in violation of any environmental law. Further, American Sealcoat is solely responsible under the Lease for any corrective or remedial action necessary to remedy any condition or activity on the premises as may be required by any environmental law, including any actual or alleged violation of any environmental law.

Under the plain and express terms of the Lease of the Frederick Court property between M&K and American Sealcoat, American Sealcoat is solely responsible for any discharges associated with the American Sealcoat industrial facility and activities that are required to be permitted under the Clean Water Act, or any other federal or state environmental laws and regulations. American Sealcoat assumed all responsibility and any liability for any such condition or failure of compliance as alleged by CRK. Prior to receipt by M&K of the August 11, 2014 CRK Notice, M&K had received no notice or information from American Sealcoat, the Georgia EPD, CRK, or any other person, of allegations of unpermitted discharges or alleged Clean Water Act violations at the American Sealcoat facility. Promptly following receipt of that CRK notice, M&K reminded American Sealcoat in writing of its environmental compliance obligations under the Lease.

M&K has no legal liability with respect to the matters alleged in the CRK notice under the Clean Water Act. The person responsible for and in actual control of a facility and any discharge of pollutants from the facility is the person responsible to have an NPDES permit issued pursuant to 33 U.S.C. § 1342. The Environmental Protection Agency directly and through approved state programs regulates the NPDES permit program and administers the requirements of the Clean Water Act. The EPA regulations specifically provide with respect to the requirement for obtaining an NPDES permit that "when a facility or activity is owned by one person but is operated by another person, it is the operator's duty to obtain a permit." 40 C.F.R. § 122.21(b). The decision of the Eighth Circuit Court of Appeals in *Newton County Wildlife Association v. Rogers*, 141 F.3d 803, 810 (8th Cir. 1998) is instructive. In that case, the plaintiffs in a Clean Water Act citizen suit attempted to hold the U. S. Forest Service responsible for discharges of pollutants associated with logging and road construction by contractors with whom the Forest Service contracted for sale and removal of timber from National Forest property. Citing this regulation, the Eighth Circuit found that the Forest Service as the owner of the property was not required to obtain an NPDES permit when it contracted with third parties to conduct timber harvesting and road building on Forest Service property. Instead, the entities harvesting the timber and building the roads, whose actions allegedly caused the discharge of pollutants complained of by the plaintiff, were the parties responsible to obtain permits for those activities required under applicable laws and regulations. NPDES permits to which this

regulation applies include not only individual permits for discharges from "point sources", but also regulated storm water discharges permitted pursuant to a Notice of Intent submitted and approved by the Georgia Environmental Protection Division under GAR050000.

M&K has not exercised and does not have a right under the Lease to exercise any control over the operations or activities of American Sealcoat at the Frederick Court Site. American Sealcoat operates that industrial facility and the activities of that facility for its own business purposes. American Sealcoat, and not M&K, causes and controls the discharges of pollutants, if any, associated with the operation and activities at the American Sealcoat facility that are alleged by CRK to have occurred. No act or omission of M&K has caused or contributed to the failure of American Sealcoat alleged by CRK to obtain a permit required for any regulated discharges of pollutants associated with the American Sealcoat industrial facility and activities.

Although the Clean Water Act is a "strict liability" statute in the sense that a discharger cannot avoid Clean Water Act liability on account of unpermitted discharges of pollutants based on lack of fault or intent, the Clean Water Act does not create the same strict liability scheme as the CERCLA statute where liability can be incurred by reason of mere ownership of property. We do not find anything in the provisions of the Clean Water Act and regulations or in the case law that would make a passive, out of possession landlord responsible for unpermitted discharges regulated by the Clean Water Act from a facility under the operation and control of a tenant, especially as here where the Lease places full responsibility on the tenant for environmental compliance. (While we understand that a CWA citizen suit claim is a federal statutory claim, we also note that M&K's position is fully consistent with the common law and Georgia statutory law that an out-of-possession landlord is not responsible to third persons for damages resulting from negligent or unlawful acts or omissions on the leased property by a tenant. *See*, O.C.G.A. § 44-7-14; *Diffley v. Marshall's at East Lake*, 227 Ga. App. 343 (1997).)

Consistent with this EPA regulation, GAR050000 places the responsibility both as a legal and practical matter on the Operator of a regulated industrial facility and its activities that result in regulated storm water discharges subject to coverage under and compliance with that General Permit. The General Permit defines the "Operator" as the "entity that has the primary day-to-day operational control of those activities at the facility necessary to ensure compliance with the SWPPP requirements and permit conditions." The General Permit contemplates and requires that the Operator will submit the NOI and will be the Permittee required to comply with the General Permit. The facility Operator is the entity having the primary day-to-day operational control over activities at the facility and the only practical ability to ensure compliance with the requirements of the General Permit to submit and follow a SWPPP and other control measures, to conduct the necessary inspections and monitoring required by the General Permit, to satisfy the reporting and recordkeeping requirements of the General Permit, and to conduct corrective actions required by the General Permit.

In accordance with those legal and practical requirements of the Clean Water Act and regulations and General Permit Number GAR050000, American Sealcoat, as the owner and operator of the industrial facility and the activities of that facility under its day-to-day operational

control, has proceeded to submit an NOI under that General Permit and is complying with the requirements of the General Permit. CRK has no basis to assert liability against M&K on account of American Sealcoat's apparent failure, prior to the May 28, 2014 citizen suit notice to American Sealcoat, to submit an NOI under that General Permit.

For all of the foregoing reasons, M&K denies the allegations and claims in the CRK Notice, and denies that M&K has or can have any liability to CRK or responsibility to any regulatory agency under the Clean Water Act or the GWQCA, on account of the matters alleged in the CRK citizen suit notice to American Sealcoat or the subsequent CRK Notice delivered to M&K. American Sealcoat continues to operate its facility at the Frederick Court Site, and American Sealcoat has actively responded to and is communicating with both CRK and the Georgia Environmental Protection Division with respect to the matters alleged by CRK concerning compliance of the American Sealcoat facility with the CWA and GWQCA. CRK is pursuing its objectives and presumably will achieve those objectives through its legal action against American Sealcoat, if CRK's claims were determined by that court to have merit.

If CRK proceeds to bring a legal action against M&K asserting such claims under the Clean Water Act and/or the Georgia Water Quality Control Act for the alleged discharge of pollutants associated with the American Sealcoat industrial facility and activities, M&K will seek under Rule 11(c) of the Federal Rules of Civil Procedure to recover its attorney's fees and other costs of that litigation to M&K. M&K expressly reserves and by this response to the CRK Notice does not waive any other defense or position available under the facts or the applicable law, including but not limited to all factual and legal defenses raised by American Sealcoat in its answer to the CRK Complaint in the federal court civil action.

Yours very truly,

Bob Norman

Robert C. Norman
For M&K Warehouses, LLC

RCN/fib
cc: Betty Nasuti, General Counsel
    Pat O'Brien