UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHATTAHOOCHEE RIVERKEEPER, INC. | : : : | |
| Plaintiff, | : | Civil Action No. 1:14-CV-3798 (LMM) |
| | : | |
| v. | : : | |
| M & K WAREHOUSES, LLC | : : | |
| Defendant. | : : | |

**CONSENT DECREE**

WHEREAS, Chattahoochee Riverkeeper, Inc. ("CRK") is a non-profit corporation dedicated to advocating and securing the protection and stewardship of the Chattahoochee River and its tributaries and watershed, in order to restore and conserve their ecological health for the people, fish, and wildlife that depend on the river system;

WHEREAS, M&K Warehouses, LLC, ("M&K") is the owner of the Frederick Court Facility located at 525 Frederick Court SW, Atlanta, Georgia 30336 (the "Facility"). CRK and M&K are collectively referred to herein as the "Parties";

WHEREAS, American Sealcoat Manufacturing, LLC ("American Sealcoat") previously leased the Facility from M&K and conducted industrial

activities at the Facility, including, but not limited to, the manufacture of asphalt emulsion pavement sealcoat and related products;

WHEREAS, on July 31, 2014, CRK initiated a citizen suit pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365, in the United States District Court, Northern District Court of Georgia against American Sealcoat for violations of the Clean Water Act allegedly occurring at the Facility caused by the industrial activities of American Sealcoat. On August 13, 2015, the Court entered a default judgment against American Sealcoat for a civil penalty under the Clean Water Act of $10 million. *Chattahoochee Riverkeeper, Inc. v. American Sealcoat Manufacturing, LLC*, No. 1:14-cv-2458 (N.D. Ga., Order Aug. 13, 2015);

WHEREAS, in addition to the action by CRK against American Sealcoat, CRK served M&K with a notice of intent to file suit ("60-Day Notice") dated August 11, 2014, under Sections 505 of the Clean Water Act, 33 U.S.C. § 1365, alleging violations of the Clean Water Act at the Facility by M&K related to its status as the owner and lessor of the Facility to American Sealcoat;

WHEREAS, CRK filed a complaint ("Complaint") against M&K in the United States District Court, Northern District Court of Georgia on November 25, 2014, entitled *Chattahoochee Riverkeeper, Inc. v. M&K Warehouses, LLC* (Case No. 1:14-cv-03798-LMM);

WHEREAS, CRK contends in its 60-Day Notice and Complaint that M&K is liable under the Clean Water Act for discharges of pollutants at the Facility. M&K denies all allegations set forth in the 60-Day Notice and Complaint;

WHEREAS, M&K contends that it had leased the Facility to American Sealcoat and that during the term of the lease the Facility was in the exclusive possession and operational control of American Sealcoat, and, therefore, any allegations that American Sealcoat violated the Clean Water Act are the responsibility of American Sealcoat;

WHEREAS, M&K contends that upon learning that American Sealcoat abandoned the Facility, M&K took immediate control of the facility and instituted corrective actions to address any potential contamination, including removing all equipment, conducting an initial removal of spills and contamination, developing a remediation work plan approved by EPD, and conducting an extensive voluntary remediation overseen by EPD, with additional oversight by the EPA, all costing M&K substantially in excess of $500,000;

WHEREAS, the voluntary remediation conducted by M&K was performed in accordance with a Final Work Plan for Site Remediation ("Work Plan") dated July 29, 2015 and submitted by M&K to EPD and approved by EPD on July 31, 2015. The approved Work Plan was amended by M&K on September 4, 2015, which was approved by EPD on September 8, 2015 ("Work Plan Addendum #1").

The approved Work Plan was further amended by M&K on September 30, 2015, which was approved by EPD on October 1, 2015 ("Work Plan Addendum #2");

WHEREAS, the Parties, through their authorized attorneys, each filed motions for summary judgment with respect to the claims and allegations in the Complaint and the alleged liability of M&K, which motions remained pending before the Court prior to the execution of this Consent Decree by the Parties;

WHEREAS, the Parties, through their authorized representatives, and without either adjudication of CRK's claims or any admission by M&K of any alleged violation or any alleged liability under the Clean Water Act, or any other federal or state law or regulation, believe it is in the best interest of the parties and the public to resolve in full CRK's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I. COMMITMENTS OF THE PARTIES

1. **Natural Restoration:** Within ninety (90) days of the Effective Date, M&K shall complete the "natural" restoration described in the modification to the approved Work Plan Addendum #2, which is attached to this Consent Decree as Exhibit A. In addition, as part of this restoration, M&K agrees to place rip-rap in

the location where the stormwater discharge from the North Georgia Granite & Marble Company enters the drainage area.

2.    **Site Inspection**: Six (6) months after the Effective Date, M&K shall grant CRK access to the Facility for the purpose of conducting a site inspection. The purpose of the site inspection will be for CRK to ensure that the Slope Soil, Lower Sediment, and Upper Sediment decision units as described in the Work Plan approved by EPD are properly stabilized and vegetated. In making this assessment, CRK shall use the "final stabilization" standard set forth in EPD's General Permit for Discharges of Storm Water Associated with Construction Activities, which requires that 100% of the soil surface is uniformly covered in permanent vegetation with a density of 70% or greater, or an equivalent permanent stabilization measure as defined in the Manual for Erosion and Sediment Control in Georgia. If, during the site inspection, the referenced decision units do not meet this standard, M&K shall revegetate the site to meet the standard and permit a follow-up re-inspection by CRK.

3.    **Sufficiency of Selected Remedy**: Subject to final approval of the remediation and restoration work by EPD, and the satisfactory completion of the Site Inspection by CRK, CRK acknowledges and agrees that the remediation and restoration work performed by M&K pursuant to the Work Plan and Work Plan Addendums #1 and #2 constitutes an appropriate and acceptable remediation and

restoration of the environmental conditions, including those alleged in the Complaint. CRK agrees not to request additional remediation from M&K or seek additional action from EPA or EPD related to the Facility.

4.  **Press Statement**: The Parties have prepared a joint press statement, which is attached as Exhibit B. The Parties agree that the joint press statement may be issued after the Parties have signed the Consent Decree.

## II.  MITIGATION, FEES, AND COSTS

5.  **Environmental Mitigation Funding**: As mitigation for the alleged violations set forth in CRK's Notice and Complaint, within seven (7) business days of the Effective Date, M&K shall make the following payments, with notice to CRK:

a.  The sum of forty-thousand dollars ($40,000) to the Georgia Department of Natural Resources, Wildlife Resources Division ("WRD"), for the project described in Exhibit C to this Consent Decree. The payment shall be made payable to the Georgia Department of Natural Resources, Wildlife Resources Division and mailed to Georgia Department of Natural Resources, Wildlife Resources Division, Attn: Jeff Durniak, 2070 U.S. Hwy. 278 SE, Social Circle, GA 30025; and

b.  The sum of ten thousand dollars ($10,000) to the Turner Environmental Law Clinic at Emory University School of Law for the project

described in Exhibit D to this Consent Decree. The payment shall be made payable to Turner Environmental Law Clinic, Emory University School of Law, and mailed to Turner Environmental Law Clinic, Attn: Mindy Goldstein, Emory University School of Law, Gambrell Hall, 1301 Clifton Rd., Atlanta, Georgia 30322.

6. **Reimbursement of Fees and Costs**: M&K shall reimburse CRK in the amount of two-hundred ninety thousand dollars ($290,000) to help defray CRK's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to M&K's attention, and negotiating a resolution of this action in the public interest. M&K shall tender said payment, payable to CRK, within seven (7) business days of the Effective Date of the Consent Decree.

7. **Supplemental Environmental Project**:

a. Within one-hundred eighty (180) days of the Effective Date, M&K shall perform a Supplemental Environmental Project ("SEP") as set forth in Exhibit E. Upon completion of the SEP, M&K shall inform CRK that the SEP has been completed and shall allow CRK access to the SEP area so that CRK may conduct a site visit of the SEP area.

b.      If the Georgia Department of Transportation does not authorize the SEP described in Exhibit E, or if M&K elects not to undertake the SEP for any reason, M&K shall contribute an additional forty-thousand dollars ($40,000) to the Turner Environmental Law Clinic at Emory University School of Law for the project described in Exhibit D to this Consent Decree.

8.      **Dispute Resolution**: If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least ten (10) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of Georgia for the limited purpose of enforcing the terms of this Consent Decree. The parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law interpreting such provisions.

### III. JURISDICTION OVER PARTIES AND SUBJECT MATTER OF THE CONSENT DECREE

9. **Jurisdiction.** For the purposes of this Consent Decree, the Parties stipulate that the United States District Court of Georgia, Northern District, has jurisdiction over the Parties and subject matter of this Consent Decree. The Parties stipulate that venue is appropriate in the Northern District of Georgia and that M&K will not raise in the future as part of enforcement of this Consent Decree whether CRK has standing to bring the Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

10. **Submission of Consent Decree to DOJ.** Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, CRK shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5. The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period. In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

### IV. WAIVER, RELEASES AND COVENANTS NOT TO SUE

11. **CRK Waiver and Release of Noticed Parties and Covenant Not to Sue:** Upon the Effective Date, CRK, on its own behalf and on behalf of its

officers, directors, employees, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives, covenants not to sue M&K or its officers, directors, employees, members, parents, subsidiaries, or affiliates, or their successors or assigns, or its agents, attorneys, or other representatives, with respect to any storm water discharges from or other alleged violations of the Clean Water Act or comparable State law at the Facility that arose before or may arise during the Term of this Consent Decree. CRK, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives, releases M&K and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors or assigns, and its agents, attorneys, and other representatives from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint. CRK, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives, agrees that the remediation activities identified in Article I, the mitigation fee and SEP identified in Article II, and the reimbursement of CRK's

costs and fees are adequate to address all alleged violations of the Clean Water Act and comparable State law at the Facility that arose before or may arise during the Term of this Consent Decree.

12. **M&K's Waiver and Release of CRK**: M&K, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, and affiliates, and their successors or assigns, or its agents, attorneys, and other representatives, releases CRK and its officers, directors, employees, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys and other representatives from and waives all claims which arise from or pertain to the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

13. **No Admission**: The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Nothing in this Consent Decree shall be construed as, and M&K expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by M&K of any fact, finding, conclusion, issue of law, or violation of law. However,

this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## V. MISCELLANEOUS PROVISIONS

14. **Effective Date**: The Effective Date of this Consent Decree shall be upon the entry of the Consent Decree by the Court, which shall be subsequent to the agency review period described in paragraph 10.

15. **Term of Consent Decree**: This Consent Decree shall continue in effect until CRK has confirmed the effectiveness of the restoration work in Article I and the completion of the payment and SEP set forth in Article II, at which time the Consent Decree, and all obligations under it, shall automatically terminate.

16. **Dismissal of the Complaint**: Within three (3) business days of the receipt of the funds described in paragraphs 5 and 6 above, CRK shall execute and file with the Court a stipulation that the Complaint be dismissed with prejudice.

17. **Execution in Counterparts**: The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

18. **Facsimile Signatures**: The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

19. **Construction**: The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary

meaning. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

20.  **Authority to Sign**: The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

21.  **Integrated Consent Decree**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

22.  **Severability**:  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

23.  **Choice of Law**: This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of Georgia.

24.  **Full Settlement**:  This Consent Decree constitutes a full and final settlement of this matter.  It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

25.  **Negotiated Agreement**:  The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but

shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

26. **Modification of the Agreement**: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

27. **Assignment**: Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns; provided, however, except for the obligation to grant CRK access to the Facility as set forth in paragraphs 2 and 7 above, the duties and obligations of M&K shall not be binding on any successor-in-title to the Facility.

28. **Mailing of Documents to CRK/Notices/Correspondence**: Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to CRK pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

CRK:

Juliet Cohen
Chattahoochee Riverkeeper, Inc.
3 Puritan Mill
916 Joseph Lowery Blvd., N.W.

Atlanta, Georgia 30318
jcohen@chattahoochee.org

With copies sent to:

Andrew M. Thompson
Promenade, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
athompson@sgrlaw.com

Unless requested otherwise by M&K, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to M&K pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

M&K :

Betty Nasuti
M&K Warehouses, LLC
85-A Mill Street, Suite 100
Roswell, Georgia 30075
bettynasuti@mimms.org

With copies sent to:

Robert C. Norman, Jr.
Jones Cork & Miller LLP
435 2nd Street, Suite 500
Macon, GA 31201
bob.norman@jonescork.com

and

Adam G. Sowatzka
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA 30309
asowatzka@kslaw.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

29. **Impossibility of Performance**: No Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible, despite the timely good faith efforts of the Party, due to circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, flood, and restraint by court order or public authority. "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship or inability to pay. Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

30. If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best

efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ and/or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and the Georgia Evidence Code.

31.    The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

[SIGNATURES TO APPEAR ON THE FOLLOWING PAGE]

Chattahoochee Riverkeeper, Inc.

Date: October _16_, 2015

_Juliet Cohen_

Juliet Cohen
Executive Director and General Counsel

M&K Warehouses, LLC

Date: October _16_, 2015

_Betty Nasuti_

Betty Nasuti, Authorized Agent

APPROVED AND SO ORDERED, this ___ day of _____, _____.


_____
LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

# Exhibit A

## Work Plan Addendum #2



# Memorandum

Date:      September 30, 2015

To:        Stacey Wix, Georgia Environmental Protection Division, Mountain District

From:      Kirk Kessler, EPS, Inc.

Re:        Addendum 2 to the Final Work Plan for Site Remediation; M&K
           Warehouses dated July 29 2015

This second addendum to the *Final Work Plan for Site Remediation* ("Work Plan") dated July 29, 2015 for the M&K Warehouses site proposes a minor modification to restoration design for the low-lying drainage area portion of the remediation.

As outlined in the Work Plan for M&K Warehouses, which was approved by the Environmental Protection Division ("EPD") on July 31, 2015, restoration of the drainage area was to comprise of backfilling excavated areas followed by reseeding (with hydroseeding) and surface stabilization with straw or alternate cover as required. This element of the restoration has been accomplished and included the use of reinforced mulch netting across the centerline of the drainage area to ensure better protection against erosion. An additional restoration measure has been suggested by the Riverkeeper to include using "natural woody debris" for the area, which should help the long-term performance of the site restoration.

The design concept involves strategic placement of natural woody debris in a baffle configuration, to slow the velocity of ephemeral flow and allow sediment to accumulate at the woody debris placement location. This restoration concept is illustrated on Attachment A. The recommended practices for woody debris restoration include the following:

- Large woody debris, defined as logs with an approximate minimum diameter of four inches and minimum length of six feet, will be placed from the edge of the excavation cut line to the far edge of the channel centerline, at an angel of 20 to 40 degrees to the bank to slow water velocity and drop suspended sediment load;

- The woody debris will be appropriately anchored, including with the use of stakes and rip-rap or other similar type materials; and

- Woody debris will be placed approximately every 75 feet spanning the distance from the plunge pool discharge into the low-lying area to a distance of approximately 400 feet down-gradient, for a total of approximately six woody debris placements (See Attachment A).



We propose to use a number of standing trees in the work area that are dead or those that have experienced significant root zone damage as a result of the excavation activities during the cleanup. They will be felled and cut to length and placed in the configuration described.

We respectfully request that EPD expedite its review and approval of this request.

# M&K Warehouses LLC
## Conceptual Layout of Low-Lying Area Channel Restoration



N

| 0 | 25 | 50 | 100 |
|---|----|----|-----|
Feet

**Elements of Channel Restoration**

— Woody Debris (Anchored)

— Channel Centerline

Hydroseeded

Riprap Lined Channel

Reinforced Matting/Hydroseeded

Environmental Planning Specialists, Inc.

**Attachment A**

# Exhibit B

## Joint Press Statement

**FOR IMMEDIATE RELEASE: October __, 2015**

Contact Information:   **Jason Ulseth**, Chattahoochee Riverkeeper
-    julseth@chattahoochee.org / 404.352.9828
**Andrew Thompson**, Smith, Gambrell & Russell (counsel for Riverkeeper)
-    athompson@sgrlaw.com / 404.815.3701
**Adam G. Sowatzka**, King & Spalding (counsel for M&K Warehouses)
-    ASowatzka@kslaw.com / 404.572.3508
**Robert C. Norman, Jr.**, Jones, Cork & Miller (counsel for M&K Warehouses)
-    bob.norman@jonescork.com / 478.745.2821

### Jointly Issued by Chattahoochee Riverkeeper and M&K Warehouses, LLC

# Clean Water Act Dispute Reaches Conclusion

**ATLANTA, GA** — A Clean Water Act citizen suit filed by Chattahoochee Riverkeeper (CRK) against M&K Warehouses, LLC (M&K) has come to a close through a settlement agreement. This concludes a case that began in 2013 when CRK alleged that pollutants were entering a Chattahoochee River tributary and traced the pollution back to American Sealcoat, an asphalt sealant manufacturer operating on leased M&K property. A lawsuit was initially filed against American Sealcoat and resulted in a $10 million default judgment. M&K has worked diligently to reverse the environmental harm caused by American Sealcoat, spending more than $500,000 on remediation work approved by the Georgia Environmental Protection Division.

With today's settlement, CRK will dismiss its lawsuit against M&K. The agreement resolves the concerns regarding contamination of soils and surface water, while ensuring no further pollutants from the site have the potential to harm the Chattahoochee River. CRK and M&K confirmed their agreement this morning with a Consent Decree filed in federal court.

Under the Consent Decree, M&K will complete the remaining work of the remediation plan, including the restoration and stabilization of an area that drains to the Chattahoochee River in order to reduce the potential for water quality impacts. In addition, M&K intends to perform a Supplemental Environmental Project (SEP) on adjacent property to improve water quality in the Chattahoochee River. M&K will also compensate CRK for its attorney's fees and expenses, and will contribute $50,000 to local organizations identified by CRK for SEPs that will directly benefit the Chattahoochee River basin.

"CRK is pleased with this resolution and that M&K agreed to a thorough clean-up of the affected property—we're assured that future stormwater runoff from the site will not carry any further contaminants to our beloved Chattahoochee River," says Riverkeeper Jason Ulseth. "This settlement agreement shows that cooperation is much more effective and successful than conflict. We think this case sends a clear message to other industrial operators and property

owners that compliance with water quality laws is not optional, and hope that it encourages them to follow M&K's example of cooperation and compliance."

CRK intends to direct a portion of the SEP funds to the Georgia Department of Natural Resources, Wildlife Resources Division for stream bank stabilization and maintenance at the Chattahoochee River Highway 166 boat launch and to the Turner Environmental Law Clinic at Emory University School of Law to support legal training for water quality protection.

M&K also expressed satisfaction with the resolution. "This was an unfortunate situation that M&K inherited from its tenant, American Sealcoat," says Bob Norman, counsel to M&K. "M&K, however, moved quickly after getting the property back from American Sealcoat to address the environmental conditions on the site and we are pleased to reach a cooperative resolution on the Clean Water Act allegations with CRK. The company is glad to have all of this behind them."

CRK's mission is to protect and preserve the Chattahoochee River, its lakes and tributaries for the people, fish and wildlife that depend upon it. For more information, visit www.chattahoochee.org.

###

# Exhibit C

**WRD Supplemental Environmental Project**

**Exhibit C**
**WRD Project Description**

This Supplemental Environmental Project ("SEP") involves M&K providing $40,000 to improve stream bank stabilization and maintenance to reduce pollution caused by erosion and sedimentation at the Highway 166 boat ramp. This SEP will have a direct geographical nexus with the alleged violations in the Complaint because it will occur within the same watershed and on the Chattahoochee River immediately downstream from the M&K Site. This SEP will be an environmental restoration and pollution reduction project, which will enhance the conditions of the Chattahoochee River adversely affected by the alleged violations.

The SEP will include some or all of the following items and may also include additional improvements to benefit and restore the area's ecosystem and reduce pollution from stormwater runoff and soil erosion:

- Planting native vegetation and shrubs to stabilize river banks;

- Removal of invasive vegetation;

- Routine cleaning of deposited sediment from the ramp;

- Placement of educational signage in the area regarding water quality and the importance of pollution prevention; and

- Placement of trash and recycling receptacles at the top of the boat ramp and in the parking lot, and securing waste removal services.

## Exhibit D

## Turner Clinic Supplemental Environmental Project

**Exhibit D**
**Turner Clinic Project Description**

This Supplemental Environmental Project ("SEP") involves supporting the Turner Environmental Law Clinic at the Emory University School of Law ("Turner Clinic") in its efforts regarding water resource protection. The Turner Clinic advocates to protect Georgia's water resources through a combination of regulatory and litigation efforts, including counseling, monitoring, investigating, and litigating.

The Turner Clinic will use these SEP resources to continue water protection efforts or undertake new water protection projects. This SEP will enhance Georgia's water resources by reducing pollution in Georgia's waterways (including the Chattahoochee River), promoting compliance with the Clean Water Act, and improving public health as it relates to water quality.

In protecting water resources and reducing pollution to Georgia's waterways, the Clinic's activities include:

- Assessing wetland dredging plans, permit violations, and assisting with disputes;
- Monitoring and litigating discharge permit violations and assisting with disputes;
- Protecting estuaries, harbors, and coastal areas;
- Monitoring river quality and supporting environmental remediation; and,
- Supporting responsible water supply operations, including reservoir development and dispute resolution.

The Turner Clinic water quality program seeks to protect and improve the water resources of the State of Georgia. The Clinic is located in the Upper Chattahoochee River Basin (which includes the M&K Site).

# Exhibit E

# Drainage Improvements Supplemental Environmental Project

## Exhibit E
## Scope of Work for the Supplemental Environmental Project

As set forth in the Consent Decree between the Parties, M&K has agreed to perform a Supplemental Environmental Project ("SEP") involving improvements to the drainage area adjacent to the Facility for the purpose of improving the quality of water discharged to the Chattahoochee River as described more fully herein. The area in question is located behind property owned and operated by North Georgia Granite & Marble Company, 4555 Frederick Ct. SW, Atlanta, GA 30336.

The proposed improvements are comprised of two tasks. The first task is to remove rubbish from the drainage area between the recently completed remedial action area (the drainage area north of the M&K property) and the surface water confluence point ("intake structure") south of Interstate 20 ("I20") that conveys surface and stormwater from the adjacent industrial facilities to the Chattahoochee River. The second task is the stabilization of an adjacent soil embankment near the I20 intake structure that is experiencing excessive erosion. A photograph of the SEP area is attached as Appendix E-1 and a location map is attached as Appendix E-2.

The elements of the proposed SEP are outlined below:

1.  M&K will remove rubbish surrounding the storm water confluence point south of I20 and in the drainage area to the west extending to the recently completed remedial action area. M&K will properly dispose of all material removed (as solid waste). M&K will use reasonable efforts to minimize soil disturbance during this work, including the use of silt fencing and hydroseeding as needed.

2.  The intake structure south of I20 will be cleared of rubbish and other material to improve water flow.

3.  Stone riprap will be added to the embankment adjacent to the intake structure to reduce the risk of additional future erosion and to slow the velocity of storm water flow entering from the industrial park, thereby reducing the sediment load to the Chattahoochee River.

Prior to completing the work, M&K agrees to seek approval from both the Georgia Environmental Protection Division ("EPD") and the Georgia Department of Transportation ("DOT"). If necessary, M&K will use reasonable efforts to obtain an access to the location from North Georgia Granite & Marble Company.

CRK acknowledges that performance of the SEP as described herein may require access by equipment and vehicles to and in the restoration area described in Paragraphs 1 and 2 of the Consent Decree with resulting impacts to the restoration in that area. M&K agrees that its contractors will make reasonable and good faith efforts to minimize such impact in the course of performing the SEP and will repair any impacts to the restoration area caused by the contractors.

Appendix E-1
Photograph of the SEP location



Appendix E-2
Map of the SEP Location



| 0 15 30 | 60 |
| Feet | |

**Remediation/Restoration Features**

Remediated, Backfilled & Hydroseeded

Remediated, Backfilled &Hydroseeded
with Reinforced Matting

Woody Debris (planned)

**Supplemental Environmental Project**

SEP Project Area

Surface water confluence point &
intake structure

Environmental Planning Specialists, Inc.